UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
FILED
NOV 1 - 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2005-85

MARK STEFFEN                                              PLAINTIFF

VS.                    MEMORANDUM OPINION AND ORDER

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                           DEFENDANT

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 9) and the cross-motion for summary judgment of the defendant (Doc. 10).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298, No. 00-5710 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social

1

Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant

2

work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, claimant was thirty-seven years old and a high school graduate. Claimant has prior relevant work as a painter and a telecommunications specialists (he upgraded telecommunication systems). On May 6, 2001, the claimant was involved in a motor vehicle accident that caused a compound fracture of his right foot that has not united. The claimant also asserts that his left knee was turned backwards in the accident and that it "goes out on him" several times a day causing him to fall to the ground. (AR 283). The claimant testified he uses a cane "quite often," uses an electric cart at the grocery store, and wears a Cam walker boot to provide support to the ankle and it also assists in rocking the foot for ambulation. (AR 276-278, 285-288). When the claimant wears the "boot" he does not need additional tools for ambulation. The claimant also suffered a broken left shoulder in the accident and testified that he cannot lift anything above his shoulder. (AR 287). The claimant has had unsuccessful attempts to return to work, but has not engaged in substantial gainful activity since

3

May 6, 2001.

At the hearing on this application, the ALJ sought testimony from the claimant and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite 5 step evaluation for determining disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the "claimant has severe physical impairment due to a non-united calcaneal fracture of the right foot."

At step 3, the ALJ determined that claimant's non-united calcaneal fracture of the right foot meets the criteria of subparagraph A of listing 1.06, but found that he did not meet subparagraph B that requires an inability to ambulate effectively. Accordingly, the ALJ found that although claimant has a severe impairment, he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1.

At step 4, the ALJ found the claimant is unable to perform his past relevant work. At step 5, the ALJ found that the claimant has a residual functional capacity to perform a full range of sedentary work. The ALJ then looked to the grid at 20 C.F.R. part 404, subpart P, App. 2, and found that the grid directed a finding of not disabled for a claimant of claimant's age, education and work capability. Accordingly, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred at step three in the analysis when he found claimant did not meet Listing 1.06. Listing 1.06 provides:

> 1.06 *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With:*
> A. Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and
> B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. part 404, subpart P, appendix 1, § 1.06.

Section 1.00B2b defines "inability to ambulate effectively" as:

> b. What We Mean by Inability to Ambulate Effectively
>
> (1) *definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. at § 1.00B2b.

5

The ALJ found that the claimant has the capacity to ambulate effectively. He reached this conclusion based upon the fact the claimant came to the hearing wearing the "boot" and without the use of a hand-held assistive device. The claimant also testified that he can walk a few steps without a cane and that when he did use a cane it was one cane, not two. The ALJ also looked to the fact claimant's physicians did not indicate he needed two canes or a walker.

In fact, consultative examiner, Dr. Johnson, stated that the claimant told her that "he can ambulate for an hour before needing to rest." (AR p. 170). Dr. Johnson also reported that the claimant "ambulates with a limping gait without the use of ambulatory aids." (AR p. 171). In addition, Dr. Eggerman performed a psychiatric consultative examination and noted that the claimant drove himself fifteen miles to the examination and that the claimant "ambulates today without assistive devices." (AR 174-75).

Given the plaintiff's testimony as to his use of the "boot," the fact he arrived at the hearing wearing the boot and without a hand-held assistive device, and that consulting physicians noted he was able to ambulate without the use of assistive devices, the ALJ's finding that he did not meet the listing requiring an "inability to ambulate effectively" was supported by substantial evidence.

The claimant further argues that the ALJ erred in not giving appropriate weight to the medical opinion of his treating

6


...

physician. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well - supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

The claimant asserts that the ALJ did not give sufficient weight to Dr. Fallis' assessment. Specifically, claimant argues that because Dr. Fallis's report stated that he could walk/stand less than two hours a day and sit for about six hours, he did not opine that the claimant could work for eight hours a day. Thus, he must be found disabled.

The ALJ, however, gave sufficient reasons to support his ruling that Dr. Fallis's assessment supported a finding that claimant could perform a full range of sedentary work. The ALJ stated:

> Dr. Fallis has now completed a medical source statement as to the claimant's capacity level as of June 16, 2004 (Exhibit 12F, pp. 3-6). This assessment is given significant, though not controlling, weight in light of the fact that Dr. Fallis has seen the claimant for treatment but is not considered to be an ongoing treating medical source. Dr. Fallis found that the claimant is limited to lifting and carrying less than 10 pounds frequently and can stand or walk less than two hours in an eight hour day, with a medically required hand held assistive device such as a cane or crutch. He stated that the claimant can sit for six hours and has limited ability to push and pull due to the fact that he has cane assisted walking. Dr. Fallis further reported that the claimant cannot climb or balance and can only occasionally kneel, crouch, crawl, and stoop.

7

A vocational expert, Janet Chapman, testified that the limitations indicated by Dr. Fallis would allow the claimant to perform the full range of sedentary work. That testimony is consistent with the findings of Dr. Fallis, who did not indicate that the claimant has any limitations of sitting. Although Dr. Fallis check marked that the claimant can sit for about six hours in an eight hour workday, this was the least limiting checkmark box available to him on the form that he was provided (Exhibit 12F, p. 4). Moreover, the claimant obviously would not have to use a cane while seated, nor would he have to use a cane while standing or walking for short periods of time, as already discussed above.

The court finds that the ALJ gave sufficient reasons to support his finding that Dr. Fallis' assessment was entitled to significant, though not controlling, weight: he is not an on-going medical source and his assessment contained some inconsistencies. Further, the court finds that Dr. Fallis' assessment does not preclude sedentary work. Dr. Fallis specifically found claimant's impairment did not limit him in sitting and, pursuant to the vocational expert's testimony, he can perform sedentary work. (AR 319). Accordingly, the court finds that the ALJ's use of Dr. Fallis' assessment was proper and supported by the evidence.

The claimant next argues that the ALJ erred in evaluating his pain. Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. <u>Kirk v. Secretary of H.H.S.</u>, 667 F.2d 524, 538 (6th Cir. 1981), <u>cert. denied</u>, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether

8

the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). See also *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how

9

it relates to the factors listed above. <u>Felisky</u>, 35 F.3d at 1039-41.

In light of the ALJ's opportunity to observe the individual's demeanor, his credibility finding is entitled to deference and should not be discarded lightly. <u>Kirk</u>, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." <u>Felisky</u>, 35 F.3d at 1036.

Here, the ALJ stated:

> As already stated, it is determined that the claimant was partially, but not fully, credible. He does have a very severe ankle and foot fracture, but not to the extent alleged. For example, the claimant alleged that when he sits he has to elevate his foot above his heart. There is absolutely no corroboration of this from his treating medical sources or from any third parties. In fact, the claimant was observed to sit without interruption during the full course of the hearing, which lasted for one hour and five minutes. During that time, he did not have to prop up his feet, even though he was told to do whatever was necessary to make himself comfortable. The claimant also testified that he has not had any surgery since July 2001 because his bones are so crushed that they lack the structure necessary to allow them to heal properly. This testimony is inconsistent with the treatment notes provided by Dr. Fallis on January 14 and January 21, 2003 (Exhibit 12F, p. 10). On January 14, Dr. Fallis instructed the claimant to return to his prior orthopedic doctor, presumably Dr. Raines, because of need for surgery in his right foot and ankle, but the claimant refused to have surgery and refused to return to Dr. Raines. Significantly, on May 27, 2004, when Dr. Fallis once more reminded the claimant that he needed reconstructive surgery, and at the same time refused to prescribe pain medications, the claimant "stormed" out of the room (Exhibit 12 F, p. 11).
>
> In his hearing testimony, the claimant denied "storming" out of Dr. Fallis' office. However it is unlikely that Dr. Fallis would fabricate such a story. The claimant's drug seeking behavior is otherwise frequently documented in the record, and it appears that this was his primary motivation for seeing Dr. Fallis.

> The claimant also alleged that he injured his left shoulder on May 6, 2001, and could not raise his left upper extremity above his shoulder. However, on August 28, 2002, Dr. Johnson found that the claimant could fully abduct and flex both arms. (Exhibit 5F, p. 3).
>
> Despite his allegations of disabling pain, the claimant has not taken any pain medication since 2003, not even over the counter medications. He stated that he cannot afford even over the counter medications, but acknowledged that he allows a friend to buy him three or four beers per week, at least. Obviously, if his pain was at the level described, he could just as easily have his friend purchase over the counter medication for him rather than beer. It is also possible that the claimant is eligible for treatment at the Veteran's Administration Medical Center, but he has not , looked into this possibility. Finally, the claimant's credibility is diminished by the fact that he has a mostly unimpressive work record other than for the year 2000, in which he earned more than $46,000 (Exhibit 3D, p. 2).

The court finds that the ALJ stated sufficient reasons for discrediting claimant's subjective complaints of pain and finding that claimant's pain was not so severe to constitute a disability. See Walters v. Commissioner of Social Security, 127 F.3d 525, 532 (6th Cir. 1997).

Lastly, the claimant argues that the ALJ erred at step five when he utilized the grid to determine that claimant could perform other work in the national economy. Specifically, the claimant argues that because he has non-exertional impairments, the ALJ was required to use a vocational expert and not rely solely on the Medical-Vocational Guidelines (the grids) to make the determination.

The grids take into account only a claimant's exertional impairments: i.e., strength for sitting, standing, walking, lifting, carrying, pushing and pulling. 20 C.F.R. §404.1569(a). The grids are inappropriate where a claimant has non-exertional

11

impairments that significantly diminish his capacity to work. Urban v. Chater, 178 F.3d 1297; 1999 WL 97251, No. 97-3885 (6th Cir. 1999) (unpublished); Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794 (6th Cir. 1986). The claimant must establish a non-exertional impairment that significantly limits his ability to do a full range of work at the designated level. Miller v. Commissioner of Social Security, 76 F.3d 379, 1996 WL 33219, No. 95-3393 (6th Cir. 1996) (unpublished): Kimbrough, 801 F.2d at 796-97. If the non-exertional impairment is not significant, the grids may be used to make the step five determination. 20 C.F.R. §404.1569a; Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001); Perry v. Social Security Administration, 208 F.3d 214, 2000 WL 282534, No. 99-5818 (6th Cir. 2000) (unpublished); Miller, 1996 WL 33219; Kimbrough, 801 F.2d at 796-97 .

Kimbrough is directly on point. In Kimbrough, the claimant argued that the ALJ improperly applied the grid to determine disability because pain is a non-exertional impairment and, therefore, precluded the use of the grids. The Sixth Circuit stated that it is only when the non-exertional limitation restricts performance at the full range of the designated level that reliance on the grid is improper. The court held that the ALJ's findings that the claimant had no non-exertional impairments and could do a full range of sedentary work had the effect of finding that his non-exertional impairment was not severe enough to prevent him from performing a full range of

sedentary work. The court noted that the ALJ considered the claimant's pain in reaching his conclusion that the claimant could not perform medium or light work. Upon finding that the objective evidence did not bear out the severity of claimant's pain, the court found substantial evidence existed to support the ALJ's finding and reliance on the grids was proper.

Similarly, in the case at bar, the ALJ's finding that claimant could perform the full range of sedentary work had the effect of finding that his non-exertional impairments were not severe enough to prevent him from performing a full range of sedentary work. The ALJ considered claimant's pain in finding that he could perform sedentary work. The court believes that the claimant suffers from a certain amount of pain, but substantial evidence supports the ALJ's finding that it does not preclude him from performing a full range of sedentary work. See Kimbrough, 801 F.2d at 796-97.

The claimant also argues that his need for a cane while walking or standing is a non-exertional impairment that precludes the use of the grid. The ALJ, however, found that the evidence supported a finding that the claimant can ambulate while wearing the boot without the use of other assistive devices and that even if he needed assistance, he required only one cane. Accordingly, the ALJ did not find claimant's periodic use of a cane to be a significant non-exertional impairment that precluded him from performing a full range of sedentary work. The court finds there was sufficient evidence to support the ALJ's conclusion that

there were no significant non-exertional impairments that prevented the claimant from performing a full range of sedentary work.

As substantial evidence exists that the claimant's non-exertional impairments are not severe enough to alter the conclusion that the claimant can do a full range of sedentary work, the court finds the ALJ's reliance on the grids was proper. Id. Accordingly, the grids provided substantial evidence to support the ALJ's conclusion at step five of the analysis.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 2001 WL 966284 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 9) be, and it hereby is, **denied** and the cross motion for summary judgment of the defendant (Doc. 10) be, and it hereby is, **granted**. That this matter be, and it is, hereby

14

dismissed and stricken from the docket of this court.

This 1st day of November, 2005.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**